UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-20044-CIV-GOODMAN
**[CONSENT CASE]**

DENISE A. LUHMAN, as assignee of
MANUEL A. CORDERO and MANUEL
CORDERO TRUCK CORPORATION,

  Plaintiff,
v.

COVINGTON SPECIALTY
INSURANCE COMPANY,

  Defendant.
_____/

## OMNIBUS ORDER ON CROSS-MOTIONS
## FOR PARTIAL SUMMARY JUDGMENT

  This insurance case originated from a state court personal injury action, where Plaintiff Denise A. Luhman ("Luhman") sued, among other defendants, Manuel Cordero Truck Corporation and its principal, Manuel Cordero (referred to collectively as "Cordero") for injuries resulting from an automobile accident (the "Underlying Action"). Defendant Covington Specialty Insurance Company ("Covington") issued a commercial general liability policy, Policy No. VBA2195700, to Manuel Cordero Truck Corporation (the "Policy"). [ECF No. 15-1]. Based on this Policy, Cordero reached out to

Covington to provide a defense in the Underlying Action.[1] However, Covington refused to defend or indemnify Cordero based on an "auto exclusion" to coverage applying and the fact that the Underlying Action's Amended Complaint ("Underlying Complaint") included the allegations of joint venture. [ECF Nos. 15-2; 15-3].

Luhman has since been assigned the rights of Cordero's Policy, which gave Luhman full authority to sue Covington regarding the Underlying Action's coverage dispute and for Covington's alleged breaches of the Policy. [ECF No. 15-5]. Luhman brought this action against Covington for breaching its contractual duties to defend (Count I) and to indemnify (Count II) Cordero in the Underlying Action. [ECF No. 1-1]. Luhman and Covington have each filed cross-motions for partial summary judgment on Count I. [ECF Nos. 16; 22]. Both motions are fully briefed. [ECF Nos. 17; 19; 26; 28].

After review of the motions, responses, replies, applicable Florida law, and the record, the Undersigned **grants** Luhman's motion for partial summary judgment that Covington breached its duty to defend Cordero in the Underlying Action and **denies** Covington's amended motion for cross-summary judgment on that same issue because it is clear that the Policy's "auto exclusion" and joint venture provisions were inapplicable.

---

[1]   Under Section II of the Policy, Manuel Cordero was also an insured as an executive officer or director of Manuel Cordero Truck Corporation. [ECF No. 15-1, p. 27].

**PARTIES CONCEDE TO UNDISPUTED FACTS**

Both parties repeatedly, expressly, and unequivocally acknowledge that (1) the coverage issue relating to Covington's duty to defend arises from undisputed facts; (2) it is purely a matter of law for the Court to decide; and (3) the only documents the Court needs to consider (or should consider) are the Underlying Complaint and the Policy.

Thus, unlike most summary judgment motions, where the party opposing the motion argues that genuine issues of material fact preclude summary judgment, the parties here agree that no additional factual disputes need to be resolved before a ruling can issue. Instead, they concede that the legal issue of Covington's duty to defend is based solely on this Court's interpretation of Florida law and is entirely ripe for a ruling. The parties' conflicting views of Florida law on Covington's duty to defend is exactly what this Court will resolve in this Omnibus Order.

**BACKGROUND**[2]

Underlying Action

On January 9, 2013, Covington issued the Policy to Manuel Cordero Truck Corporation. [ECF No. 15-1, p. 1]. On October 27, 2013, Luhman was injured in an automobile accident when her car collided with a semi-truck operated by Melquiades

---

[2]   Because the facts are undisputed and based solely on the Underlying Complaint and the Policy [ECF Nos. 15-1; 15-2], the Court will summarize the undisputed factual and procedural allegations from the documents and the record.

Gongora ("Gongora"). [ECF No. 15-2, p. 3]. On or about January 20, 2014, Luhman filed the Underlying Complaint, which added Cordero as defendants and alleged that they were vicariously liable for the acts of Gongora regarding the auto accident. [ECF No. 15-2].

The Underlying Complaint included: a vicarious liability count against Cordero, Shark Trucking Corporation ("Shark Truck"), and Big Dog Express of South Florida, Inc. ("Big Dog") (Count IV); a negligent hiring, retention, and supervision count against Cordero, Shark Truck, and Big Dog (Count V); and a joint venture liability count against Cordero, Shark Truck, and Big Dog (Count VI). [ECF No. 15-2, pp. 6-12].

On April 24, 2014, Covington notified Cordero's counsel that it was denying coverage and it refused to defend Cordero against Luhman's claims. [ECF No. 15-3].

On May 1, 2015, Luhman and Cordero entered into a Settlement Agreement and an Assignment, a "Coblentz" agreement, under which Cordero assigned the legal rights and claims under the Policy to Luhman. [ECF Nos. 15-4; 15-5]. A consent judgment for damages in the amount of $1,376,000.00 was entered against Cordero. [ECF Nos. 15-6; 27-1].

On December 3, 2015, Luhman filed the instant action against Covington in the Circuit Court in and for Miami-Dade County, Florida (Case No. 2015-028052-CA-01) and on January 1, 2016, Covington removed the case to federal court. [ECF Nos. 1; 1-1].

On March 21, 2016, Luhman filed her motion for partial summary judgment, which Covington responded to on April 5, 2016, and Luhman replied to on April 12, 2016. [ECF Nos. 16; 17; 19]. Covington filed its cross-motion for summary judgment on April 5, 2016, which Luhman responded to on April 13, 2016. [ECF Nos. 18; 20]. On April 15, 2016, Covington filed a motion to amend/correct its cross motion for summary judgment by filing its amended motion. [ECF No. 22]. Luhman responded to the amended motion on April 27, 2016, to which Covington replied to on May 9, 2016. [ECF Nos. 26; 28]. On October 5, 2016, the Court entered Endorsed Orders granting Covington's motion to amend and stating that "Covington need not separately re-file the Amended Cross Motion" and denying as moot Covington's original cross-motion. [ECF Nos. 18; 53; 54].

The Policy's Provisions and Covington's Reasons for Denying Cordero Coverage

The Policy's "Section I – Coverages," subsection 1 "Insuring Agreement," covers bodily injury and bodily damage liability to which the insurance applies. [ECF No. 15-1, p. 19]. Section I also includes subsection 2 "Exclusions," which contains the "auto exclusion," which is referenced by Covington as "Exclusion g." and is titled "Aircraft, Auto Or Watercraft." [ECF Nos. 15-1, pp. 20-22; 15-3]. Exclusion g. excludes coverage for:

> **"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment** to others of any aircraft, **"auto"** or watercraft **owned or operated by or rented or loaned <u>to any insured</u>.**

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, **"auto"** or watercraft **that is owned or operated by or rented or loaned to any insured.**

[ECF No. 15-1, p. 22, Exclusion g.] (emphasis added). The Policy's Section II- WHO IS AN INSURED includes "an employee" as an insured. [ECF No. 15-1, pp. 27-28, 31-33].

In Covington's denial letter, it identified Luhman's loss as arising out of an auto accident and stated that Exclusion g. to Section I–Coverages applied. [ECF No. 15-3, p. 5]. Covington argues in its filings before the Court that Luhman alleged in the Underlying Complaint that Gongora was acting as an "**employee**" of Cordero and, based on this, Gongora qualified as an insured under the Policy. Thus the "auto exclusion" applied to deny Cordero coverage under the Policy.

Covington's other stated basis for denying coverage in its denial letter, which it reasserts in its cross-motion, was that Luhman alleged that Gongora and Cordero were parties in a joint venture. Section II, subsection 1.d states: "If you are designated in the Declarations as: . . . [a]n organization other than a . . . joint venture . . . , you are an insured[.]" [ECF No. 15-1, p. 27]. Section II, subsection 4 states that "**[n]o person or organization** is an insured with respect to the **conduct of** any current or past . . . **joint venture** . . . that is not shown as a Named Insured in the Declarations. [ECF No. 15-1, p. 28] (emphasis added).

6

Accordingly, Covington asserted that because "Manuel Corderos Truck Corp is the Named Insured designated in the Declarations[,] [p]arties to the alleged joint venture do not meet the definition of WHO IS AN INSURED under 1.d." [ECF Nos. 15-1, pp. 27-28; 15-3, p. 5].

Underlying Complaint's Allegations Relevant to the Duty to Defend Determination

The allegations of the Underlying Complaint [ECF No. 15-2] which describe Gongora's relationship to Cordero as an employee were set forth in Counts IV, V and VI and were relevant to Covington's first basis for denying coverage under the "auto exclusion." However, these same allegations did not solely claim that Gongora was simply an employee. Luhman *also* alleged that, at the time of the crash, Gongora was acting as "**an agent**" of Cordero. See the following allegations below:

> 37. When the subject accident occurred, Defendant, Gongora, an *agent*, servant and/*or* employee of Defendants, was acting within the course and scope of his employment *or agency* with these Defendants.
>
> 45. When the subject accident occurred, Defendant, Gongora, *an agent*, servant, and/*or* employee of Defendants, was acting within the course and scope of his employment or *agency* with these Defendants.
>
> 57. When the subject accident occurred, Defendant, Gongora, an *agent*, servant, and/*or* employee of Defendants, was acting within the course and scope of his employment or *agency* with these Defendants, and within the course and scope of the parties' joint venture.

[ECF No. 15-2] (emphasis added).

Luhman's Count VI (joint venture liability) included language that Cordero and Gongora were parties to a joint venture, which was relevant to Covington's second

7

basis for denying Cordero coverage in the Underlying Action. See the following allegations below:

> 55. At the time of the subject accident, each of the Defendants, Gongora, Cordero, Shark Truck, and Big Dog, were *parties to a joint venture*, completing approximately 100-200 or more commercial trucking jobs together, including the subject job that was to be completed on October 7, 2013 by Defendant, Gongora.
>
> 56. At the time of the subject accident, the semi-truck driven by Defendant, Gongora was transporting a large load of soil weighing approximately 78,000 lbs on behalf of and for the benefit of Defendants, Cordero, Shark Truck, and Big Dog, and *in furtherance of the parties' joint venture.*
>
> 58. As a result, Defendants, Cordero, Shark Truck, and Big Dog, are each vicariously liable for the negligent actions of Defendant, Gongora, including the subject accident that proximately caused Plaintiff's significant injuries, without regard to which of the *joint venturers* actually employed Defendant, Gongora.

[ECF No. 15-2] (emphasis added).

Finally, although the Underlying Complaint contained no allegations as to who owned the truck that injured Luhman, it did allege that "[a]t the time of the subject accident, the semi-truck driven by Defendant, Gongora was transporting a large load of soil weighing approximately 78,000 lbs **on behalf of and for the benefit of** Defendants, Cordero [.]" [ECF No. 15-2, ¶¶ 36; 56] (emphasis added).

This omission is important because the "auto exclusion" excludes coverage for bodily injury arising out of the "ownership, maintenance, use or entrustment to others" of an "auto owned or operated or rented or loaned to any insured." Thus, if Luhman

8

had alleged that Cordero owned the truck Gongora was driving, then there would be no coverage. However, this is not the case, and the Undersigned's determination of the duty to defend is limited to the "auto-exclusion" and joint venture arguments.

**LEGAL STANDARD**

<u>Partial Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that a party may move for partial summary judgment where the party identifies "each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought." Fed. R. Civ. P. 56(a).

There are no material disputes of fact at issue in this case, as the facts arise only from the allegations of the Underlying Complaint and the Policy. Thus, to prevail on partial summary judgment, the parties must prove that they are entitled "to judgment as a matter of law" that Covington did (or did not) have a duty to defend.

<u>Florida Law Applies</u>

The parties here must prove that they are entitled to partial summary judgment as a matter of Florida law because this is a diversity case in which the rule of decision is supplied by Florida law. Furthermore, the Policy was issued to Cordero in Florida, thus Florida law governs its interpretation under the principle of *lex loci contractus*. *Sparta Ins. Co. v. Colareta*, 990 F. Supp. 2d 1357, 1362-63 (S.D. Fla. 2014).

Because this is a diversity case, we are bound to follow the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest

court would decide the issue otherwise. *Silverberg v. Paine, Webber, Jackson & Curtis*, 710 F.2d 678, 690 (11th Cir. 1983). Florida district court decisions bind all Florida trial courts in the absence of inter-district conflict. *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (internal citation omitted).

Under Florida law, an insurer's duty to defend is distinct from and broader than its duty to indemnify. *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.,* 76 So. 3d 20, 23 (Fla. 1st DCA 2011) ("*Category 5*") (internal citations omitted). Moreover, the framework for analysis on a duty to defend issue is determined solely by the underlying complaint whereas the duty to indemnify is not determined by reference to the underlying complaint's allegations -- but rather by reference to the *actual* facts and circumstances of the injury. *Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*, No. 8:12-cv-235-T-33MAP, 2012 WL 6589739, at *2-3 (M.D. Fla. Dec. 18, 2012) ("*Kaloust*").

To put things in perspective, if the Court were to determine that Covington had no duty to defend Cordero, then the entire case ends immediately because there is no duty to indemnify if there is no duty to defend. On the other hand, if the Court were to determine that Covington was obligated to *defend* Cordero, then the case moves forward on the remaining issues.

Under Florida law, the insurer must defend if the allegations of the underlying complaint *could* bring the insured within the policy provisions of coverage. *Driggers Eng'g Servs. Inc. v. CFA Fin. Corp.*, 113 F. Supp. 3d 1224, 1228 (M.D. Fla. 2015) (internal

citations omitted). Put another way, the duty to defend arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage, even if the facts alleged are actually untrue or the legal theories are unsound. *State Farm Fire & Cas. Co. v. Higgins*, 788 So. 2d 992, 995-96 (Fla. 4th DCA 2001), *approved*, 894 So. 2d 5 (Fla. 2004) (internal citations omitted). If the complaint alleges facts which are partially in and partially out of the policy's coverage, then the insurer is obligated to defend the *entire* suit. *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1037 (Fla. 1st DCA 2000) (internal citations omitted).

If an insurer seeks to avoid a duty to defend because of a policy exclusion, then it "has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion, and **are subject to no other reasonable interpretation.**" *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001) (applying Florida law) (emphasis added) (internal citations omitted); *see also Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997).

If there is any doubt about the insurer's duty to defend, then "the issue is resolved in favor of the insured." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995) (applying Florida law) (internal citations omitted); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985) (finding that all doubts and ambiguities as to whether a duty to defend exists must be resolved against the insurer and in favor of the insured) (internal citation omitted).

ANALYSIS

The Auto Exclusion Does Not Apply

Here, if the Underlying Complaint **alleged only** that Gongora was an employee [ECF No. 15-2, ¶¶ 37, 45, 57], then the "auto exclusion" would apply. As Section II states, "an employee" qualifies as an insured under the Policy. And based on this, Gongora would qualify as an insured and thus, under the "auto exclusion," Covington would not have a duty to defend Cordero in the Underlying Action.

However, Luhman also framed the allegations in the Underlying Complaint in the alternative -- that Gongora was "an **agent**, servant, and/**or** employee." [ECF No. 15-2, ¶¶ 37, 45, 57] (emphasis added). In Florida, parties are permitted to plead in the alternative in complaints. *See* Fla. R. Civ. P. 1.110(g) (recognizing party's right to "state as many separate claims or defenses as that party has, regardless of consistency[.]"). Thus, the critical inquiry for the Court is to determine whether Covington has proven that Luhman's agency allegations *also* fell unequivocally inside the "auto exclusion." *See Northland Cas. Co.* 160 F. Supp. 2d at 1359; *Westmoreland,* 704 So. 2d at 179.

Florida Courts have applied similar "auto exclusions" and have found that there is, or can be, a distinction between an employee and an agent under such policies, where allegations of employees in the complaint would exclude coverage, whereas allegations of an agency relationship would not.

For instance in *Category 5*, the First District Court of Appeal considered on a motion for summary judgment the applicability of an identical "auto exclusion" which excluded coverage for bodily injuries arising out of the use of an automobile operated by an insured, a term defined to include the named insured's "employees." 786 So. 3d at 23–24.

The insurer argued that the driver was an employee under the policy based on the allegation in the underlying complaint that the driver "was hired by or under the direction, control and supervision" of the insured's shareholders or managers. *Id.* at 24. However, the court rejected this argument, stating that, "[w]hile this allegation might acknowledge a more generalized principal-agent relationship between appellant and [the driver], there is nothing that explicitly indicates the existence of an employer-employee relationship[.]" *Id.* Thus, the court found that the underlying complaint alleged facts which brought the lawsuit outside of the "auto exclusion," triggering the insurer's duty to defend the insured in the underlying action. *Id.*[3]

*Category 5* is not the only case which recognizes the critical legal distinction between an "agent" and an "employee" for purposes of applying this "auto exclusion"

---

[3] Following reversal and remand in *Category 5*, the trial court entered summary judgment in the **insured's** favor on the issue of coverage, and awarded Category 5 its attorney's fees incurred in litigating the separate coverage case, pursuant to *Fla. Stat.* § 627.428. On appeal, the insurer did not challenge the trial court's ruling on coverage. *Companion Prop. & Cas. Ins. Co. v. Category 5 Mgmt. Grp.*, 189 So. 3d. 905 (Fla. 1st DCA 2016).

13

under Florida law. In *Kaloust,* the Middle District Court of Florida relied on *Category 5* and found that the underlying complaint alleged only a general principal-agent relationship between the driver and the insured, which was insufficient to establish an employer-employee relationship, because the terms "agent" and "employee" are not interchangeable under Florida law. *Kaloust,* 2012 WL 6589739, at *5. Thus, the *Kaloust* court found that the insurer had not proven as a matter of law that the driver was an insured under the Policy such that the "auto exclusion" would apply to preclude coverage.[4] *Id.*

It is thus clear from *Category 5* and *Kaloust* that, where the complaint alleges a "principal-agent" relationship between the driver and the insured, such an "agency" relationship is not synonymous with an "employer-employee" relationship, thus the allegations that Gongora was Cordero's "agent" did not trigger the exclusion in this case. The exclusion here would apply only where the vehicle in question was "owned or operated by or rented or loaned to *any insured*." The problem with Covington's position is that the Policy's WHO IS AN INSURED provision did not confer "insured"

---

[4] Covington cites a non-binding Southern District Court of Florida opinion, *Discovery Prop. & Cas. Ins. Co. v. Lexington Ins. Co.*, 664 F. Supp. 2d. 1296 (S.D. Fla. 2009) ("*Discovery*"), that was decided two years before *Category 5* and *Kaloust*, to support the argument that agency is treated similarly to employees under similar policies and "auto exclusions." In *Discovery*, the Court held that if the driver were an agent, although the driver would not be considered an insured under the policy, then the "auto exclusion" would still apply through the concept of respondeat superior. *Id.* at 1302-03. This Court is not adopting this reasoning of equating agency with respondeat superior, and chooses instead to follow the holdings in *Category 5* and *Kaloust*.

status upon the named insured's "agent." Thus, the specific condition -- expressly stated in Exclusion g. -- was not satisfied.

Furthermore, it is of no consequence that there were allegations that Gongora was an employee. This is because Florida law requires an insurer to defend the entire case if the complaint alleges facts that are "partially within" (*i.e.*, the allegation that Gongora was an "agent") and "partially outside" (*i.e.*, the allegation that Gongora was an "employee") the coverage of the policy. *Colony Ins. Co.*, 777 So. 2d at 1037.

Because an agent would not fit within the policy exclusion, there *might* be coverage -- which means Covington had a duty to defend.  As the facts later get hashed out, it may turn out that Covington would not have a duty to indemnify (*e.g.*, if the actual evidence, as opposed to the allegations in the Underlying Complaint, demonstrate that Gongora was an employee). But the duty to defend is decided solely from the Underlying Complaint and the Policy, and that assessment generates the conclusion that Covington did not meet its burden to prove the exclusion.

Covington Has Not Met its Burden Regarding its Joint Venture Theory

To start, the Court finds that Covington did not accurately summarize the allegations as to joint venture in the Underlying Complaint. Although Covington claims that joint venture was alleged in Counts IV and V, this is not correct. Only in Count VI did Luhman allege that Cordero and Gongora were parties in a joint venture, in her specific and unambiguous cause of action for joint venture liability.

To be sure, Counts IV and V allege that Gongora was driving the truck "on behalf of and for the benefit of" Cordero (and others), and this *might* have suggested the existence of a joint venture. But Counts IV and V did not *unambiguously* assert this. The mere fact that a joint venture was a permissible inference does not necessarily mean that Covington has met its burden of demonstrating that the joint venture scenario was the *only* reasonable interpretation to justify it denying coverage. *See Northland Cas. Co.* 160 F. Supp. 2d at 1359; *Westmoreland,* 704 So. 2d at 179.

The "general factual allegations" section of the Underlying Complaint is found at paragraphs 12 through 16. Luhman realleged those same paragraphs in each of the six counts. None of those paragraphs and none of the first 11 paragraphs (which are part of the paragraphs being realleged at the beginning of each count) alleged that there was a joint venture. If the general allegations (which were realleged in all counts) *had* included that specific joint venture allegation (which they did not), then the joint venture exclusion would apply and Covington would be entitled to summary judgment on the duty to defend issue. But that is not how the Underlying Complaint was drafted. Instead, as noted above, Luhman asserted joint venture in only one count -- Count VI, for joint venture liability. Luhman did not adopt or reallege joint venture in any other section of the Underlying Complaint.

As stated earlier, the Underlying Complaint included *other* allegations (*i.e.*, that Gongora was Cordero's agent) that were not excluded by the Policy. If there is any

16

doubt about the insurer's duty to defend, then the issue is resolved in favor of the insured. Because it is unclear from the four corners of the Underlying Complaint that Gongora was a party to a joint venture with Cordero in Counts IV and V, I must resolve this ambiguity in favor of Luhman. *Lawyers Title Ins. Corp*, 52 F.3d at 1580. Therefore, I cannot grant Covington's cross-motion for summary judgment. Again, Covington might prevail later on the duty to indemnify (*e.g.*, if the facts later establish that there was in fact a joint venture), but that does not entitle it to prevail at this juncture on the preliminary duty to defend question.

**CONCLUSION**

The Undersigned finds that Covington had a duty to defend and thus, **grants** Luhman's motion for partial summary judgment and **denies** Covington's amended motion for cross-summary judgment.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on March 2, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE